UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-14462-MARRA

DIANNE SOLDEVILLA, individually and
on behalf of all others similarly situated,

    Plaintiff,

vs.

ON THE BARRELHEAD, INC.,

    Defendant.
_____/

**ORDER DIRECTING DEFENDANT ON THE BARRELHEAD, INC.
TO SHOW CAUSE AS TO WHY THIS CASE SHOULD NOT BE REMANDED
TO THE NINETEENTH JUDICIAL CIRCUIT IN AND FOR ST. LUCIE COUNTY,
FLORIDA FOR LACK OF SUBJECT MATTER JURISDICTION**

**THIS CAUSE** is before the Court *sua sponte*. Federal court are courts of limited jurisdiction and therefore have an obligation to inquire into their subject matter jurisdiction. *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1279-1280 (11th Cir. 2001). This obligation exists regardless of whether the parties have challenged the existence of subject matter jurisdiction. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

Here, Defendant removed the case to this Court asserting subject matter jurisdiction under the Class Action Fairness Act ("CAFA"). Under CAFA, district courts are given federal subject matter jurisdiction over class actions that involve, among other things, an aggregate amount in controversy of at least $5 million and minimal diversity among the parties. *See* 28 U.S.C. §1332(d). "CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction." *Evans v. Walter Indus., Inc.,*

449 F.3d 1159, 1164 (11th Cir. 2006). Therefore, as the removing party, Defendant bears the burden of establishing that the jurisdictional prerequisites of the Class Action Fairness Act are met.

As a threshold matter, a defendant's notice of removal must include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, --- U.S. ---, 135 S. Ct. 547, 554 (2014). If the plaintiff contests the allegation, or the court questions it, a defendant must then present evidence establishing that the amount in controversy requirement is met. *Id.* (citing 28 U.S.C. § 1446 (c)(2)(B)). *See also Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 912 (11th Cir. 2014). A conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without exposition of the underlying facts, is insufficient to meet this burden. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). Rather, a removing defendant should make "specific factual allegations establishing jurisdiction" and be prepared to "support them (if challenged by the plaintiff or court) with evidence combined with reasonable deductions, reasonable inferences or other reasonable extrapolations." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).

## I. PROCEDURAL HISTORY

Plaintiff brings this single-count putative class action under Florida's Electronic Mail Communications Act, Fla. Stat. §§ 668.601 *et seq*. ("FEMCA").[1] Previously, this Court dismissed Plaintiff's First Amended Complaint, finding the allegations insufficient for the Court to infer plausibly that the amount in controversy satisfied the $5 million jurisdictional threshold

---

[1] The putative class proposed by Plaintiff consists of other Florida residents who allegedly received the same email advertisement (containing the same allegedly deceptive subject line) within the four-year period of time preceding the filing of her Complaint.

established by CAFA [DE 22], invoked in that pleading as a premise for federal subject matter jurisdiction.[2]  In an effort to address this deficiency, on May 5, 2020, Plaintiff filed her Second Amended Complaint adding two new statements addressing the amount-in-controversy requirement,[3] allegations which simply tracked the unsworn statements of defense counsel set out in Defendant's original  removal notice [DE 23, ¶¶ 12-13]:

> [B]ased on [Defendant's] ongoing investigation of its business records and its discussions with the third-party marketers that would have sent the Alleged Email and others like it, it is clear that there will be in excess of 100 class members likely implicated in the putative class asserted by Plaintiff in the Complaint…
>
> [B]ased on plaintiff's allegations and defendant's ongoing investigation of those allegations the $5 million CAFA amount in controversy requirement is satisfied. … Plaintiff alleges that messages "like the ones sent to Plaintiff to thousands of consumers" (sic) and this allegation is consistent with [Defendant's] ongoing investigation of its business records and its discussion with the third-party marketers that would have sent the alleged email and others like it.  Specifically [defendant] has been told by its third-party marketers that millions of emails were sent by them to United States residents in 2019 alone. *Although [Defendant] at this time cannot identify which specific emails were sent to Florida residents,* based on this information and the representations made by the third-party marketers regarding the volume of emails sent, the amount in controversy based on statutory damages exceeds $5,000,000.

[Defendant's Notice of Removal] [DE 1, ¶¶ 13, 20-21][emphasis supplied].

Defendant has moved to dismiss the Second Amended Complaint for failure to state  a

---

[2] Plaintiff originally filed her single-count FEMCA complaint against On the Barrelhead in Florida state court, alleging over $15,000 in damages, at that time the jurisdictional threshold of the circuit court in which the case was originally filed.  Defendant removed the action to this Court on November 27, 2019 [DE 1], asserting jurisdiction under the CAFA and contending, among other things, that the amount in controversy exceeded the $5,000,000 CAFA threshold based on the volume of similar emails likely generated on its behalf by third-party marketers [DE 1].

On December 3, 2019, Plaintiff  filed her First Amended Complaint, adding, on "information and belief," allegations pertaining to  the "thousands" of persons who likely comprised the putative class of Florida residents and email recipients.  On this premise, Plaintiff also directly invoked  federal  jurisdiction under CAFA.  [DE 6, ¶ 11].

[3] As Plaintiff claims liquidated damages on behalf of the putative class in the amount of $500 per Florida email recipient, the  putative class would need to encompass at least 10,000 Florida recipients in order to satisfy the $5 million amount-in controversy threshold established by CAFA.

claim under Rule 12(b)(6), challenging Plaintiff's standing to bring the asserted FEMCA claim, and asserting federal preemption under the federal "CAN-SPAM Act." Defendant does not challenge the sufficiency of the Plaintiff's jurisdictional allegation [DE 25].

Mindful of its obligation to assess its subject matter jurisdiction independently in all cases, the Court here revisits the issue of its subject matter jurisdiction and specifically questions the plausibility of the amount-in-controversy allegations advanced by both sides. Since Defendant is the party who removed the case, and since the Court has questioned the existence of its jurisdiction under CAFA, the burden is on Defendant to show -- by a preponderance of the evidence -- that the aggregate amount in controversy exceeds the $5 million CAFA jurisdictional threshold. *Anderson v. Wilco Life Ins. Co.,* 943 F.3d 917, 925 (11th Cir. 2019) (when plaintiff contests or court questions defendant's amount in controversy allegation under CAFA, defendant must prove by preponderance of evidence that amount in controversy is sufficient) (citing *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89, 135 S. Ct. 547, 554, 190 L.Ed.2d 495 (2014)).

To determine whether Defendant has carried this burden, the Court may rely on evidence put forward by Defendant, as the removing party, as well as all reasonable inferences and deductions available from that evidence. *Id*. The value of injunctive or declaratory relief sought may considered in the mix, but the value of these components must be sufficiently measurable and certain in order to merit inclusion, and this standard is not met where the valuation of declaratory relief is "too speculative and immeasurable." *Id.* In this case, the Court shall not include a valuation of the requested declaratory and injunctive relief in addressing the amount in controversy, where no evidentiary predicate has been offered by either side to guide such an assessment and none is otherwise apparent.

The inquiry, therefore, centers on the plausibility of the statutory liquidated damages of $500 per email violation claimed on behalf of the putative class of Florida email recipients. With this focus, the Court finds Defendant's conclusory allegations pertaining to "millions" of similar email disseminated nationally by third-party marketers –with no allegation or specific factual allegations regarding the number of Florida recipients -- woefully inadequate to present a "plausible allegation" of the amount in controversy. This unsupported allegation fails to provide the Court with any specific factual information from which the Court can determine whether the damages of the putative class – necessarily a pool of Florida residents only – plausibly exceed the jurisdictional threshold. Based on the allegations in Defendant's Notice, and now Plaintiff's Second Amended Complaint, the Court can do no more than speculate regarding any liquidated damages to which Florida residents within the putative class are potentially entitled to collect in connection with Defendant's alleged violation of the FEMCA.

Defendant offers no affidavits or other supporting proofs to suggest how its email advertising campaign may have impacted Florida residents other than the named plaintiff in this case. Indeed, Defendant expressly concedes in its removal notice that it has yet to ascertain whether and in what volume such emails were directed toward Florida residents. Without such information, there is no plausible basis to infer that Defendant caused a single other email to be sent to a computer located in Florida during the class period, and hence no basis to infer at least 10,000 Florida residents were the recipients of an unsolicited email containing the same subject line as that allegedly received by the named Plaintiff in this case (at the asserted $500 liquidated damage FEMCA penalty asserted per recipient, the minimum class needed to meet the $5 million CAFA threshold).

5

A defendant cannot establish CAFA jurisdiction by speculation and conjecture, with unreasonable or unsupported assumptions about key unknown variables. *Fritsch v. Swift Transportation Co. of Arizona, LLC,* 899 F.3d 785, 793 (9th Cir. 2018); *Dudley v. Eli Lilly and Co.*, 778 F.3d 909 (11th Cir. 2014) (defendant failed to meet CAFA amount-in-controversy requirement with speculative proffer that failed to identify a specific number of class participants involving affected employees and failed to show amount each member was entitled to receive); *Garcia v. Shasta Beverages, Inc.*, 2020 WL 598508 (C.D. Cal. 2020) (defendant's unreasonable and unsupported assumptions found insufficient to support removal jurisdiction under CAFA); *Glenn V. Quintana D.C., P.A. v. Safeco Ins. Co. of Illinois*, 2011 WL 13223572 (S.D. Fla. 2011) (remanding Florida PIP case removed under CAFA where defendant's theory of damages was based on speculation regarding number of claims and measure of damages per claim).

As noted, the information presently before the Court in this case, as to both Plaintiff and Defendant, leaves the Court unable to determine whether the amount in controversy requirement is satisfied without engaging in impermissible conjecture and speculation. Having thus questioned the plausibility of Defendant's amount-in-controversy allegation, the Court shall now permit the parties to adduce supplemental proofs and briefing directed to the amount-in-controversy requirement under CAFA. *See generally Ibarra v. Manheim Investments, Inc.,* 755 F.3d 1193, 1197 (9th Cir. 2015) (where CAFA amount in controversy requirement is challenged, both sides should have opportunity to submit proofs).

In discharging this function, the parties are reminded that the burden rests on Defendant, as the removing party, to establish CAFA jurisdiction by a preponderance of the evidence, and that post-removal jurisdictional discovery on this question is impermissible. *Lowery v. Ala. Power*

6

*Co.*, 483 F.3d 1184, 1217 (11th Cir. 2017).[4]

It is accordingly **ORDERED AND ADJUDGED**:

1. Defendant is ordered to **SHOW CAUSE,** in writing, within **TWENTY (20) DAYS** from the date of entry of this order, as to why this action should not be remanded to the Nineteenth Judicial Circuit in and for St. Lucie County, Florida, in which it was originally filed, for lack of subject matter jurisdiction under CAFA. Mindful of its obligation to show, by a preponderance of the evidence, that the jurisdictional amount in controversy threshold is met, Defendant shall file supplemental briefing and proofs specifically directed to the amount-in-controversy requirement as it relates to the putative class defined in Plaintiff's Second Amended Complaint.

2. Within **TEN (10) DAYS** after submission of Defendant's Statement, Plaintiff shall file her Response, together with any supporting evidentiary proofs she wishes to proffer on the threshold amount in controversy requirement.

3. No further briefing directed to this threshold jurisdictional question shall be submitted unless

---

[4] As noted by the Eleventh Circuit, addressing the analogous situation where a removing defendant is challenged with a motion to remand (triggering the same evidentiary burden as that following a *sua sponte* inquiry by the court):

> [A] defendant that files a notice of removal prior to receiving clear evidence that the action satisfies the jurisdictional requirements, and then later faces a motion to remand, is in the same procedural position as a plaintiff in an original action facing a motion to dismiss. The Court should not reserve ruling on a motion to remand in order to allow the defendant to discover the potential factual basis of jurisdiction. Such fishing expeditions would clog the federal judicial machinery, frustrating the limited nature of federal jurisdiction by encouraging defendants to remove, at best, prematurely, and at worst, in cases in which they will never be able to establish jurisdiction.

*Lowery*, 483 F.3d at 1217.

7

expressly invited by the Court.

**DONE and SIGNED** in Chambers at West Palm Beach, Florida this 16th day of June 2020.

KENNETH A. MARRA
United States District Judge

cc. all counsel